**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

04 SEP 30  PM 4: 05

|  |  |  |
|---|---|---|
| CYNTHIA CAGLE, | ) | |
| | ) | U.S. DISTRICT COURT |
| Plaintiff, | ) | N.D. OF ALABAMA |
| | ) | |
| vs. | )Civil Action NO. 02-JEO-1750-S | |
| | ) | |
| MARSHALL DURBIN FOOD | ) | |
| CORPORATION, | ) | **ENTERED** |
| | ) | |
| Defendant. | ) | SEP 3 0 2004 |

## MEMORANDUM OPINION

Before the court is motion of the defendant, Marshall Durbin Food Corporation

("Marshall Durbin"), for summary judgment (doc. 17)[1] and the brief in support thereof (doc.

18).[2] The motion is opposed, in part, by the plaintiff, Cynthia Cagle ("Cagle" or "the plaintiff").

Premised on the briefs and the record, the court finds that the motion is due to be granted.

The plaintiff alleges that Marshall Durbin violated Title VII of the Civil Rights Act of

1964 ("Title VII"), the Equal Pay Act ("the EPA"), and otherwise intentionally discriminated

against her with respect to her pay. (Doc. 1). The plaintiff further alleges that she was

terminated by the defendant in violation of Title VII and the EPA in retaliation for her

complaints of gender discrimination in pay and promotions. (Doc. 1 at ¶ 17). The defendant

denies any discrimination or retaliation. (Doc. 6 at 2).

---

[1]The defendant attached the depositions of the plaintiff and its corporate representative, Barry Hillgartner, to its motion for summary judgment, as well as defendant's exhibits 1 through 14, and the EEOC file produced pursuant to the Freedom of Information Act to the defendant's counsel.

[2]References herein to "Doc. ___" are to the record as prepared by the Clerk of the Court.



## FACTS[3]

Marshall Durbin produces and processes poultry for wholesale purchase. It has operations in Alabama and Mississippi and has its headquarters in Irondale, Alabama. It has a processing plant in Jasper, Alabama. Cagle began work at Marshall Durbin at the Jasper plant on December 5, 1996, as a clerk making $7.00 per hour. (Hillgartner's Dep. at Ex. 4 (July 24, 2001 letter to the EEOC)).[4] On March 3, 1997, she was given a raise to $7.25. (Ex. 3). On September 5, 1997, Marshall Durbin promoted the plaintiff to Assistant Human Resource Manager on the second shift at a salary of $20,000.00.[5] (Ex. 4). On October 8, 1997, Marshall Durbin gave her another raise, bringing her salary to $21,200.00. (Ex. 5).

On May 2, 2000, Cagle was transferred to day shift as the Employment Supervisor/ Assistant Human Resources Manager with no change in salary. (Ex. 6; Cagle Dep. at p. 53).[6] At that time, the Assistant Human Resources Manager position on the second shift was eliminated and a new management position, Personnel Supervisor for Night Shift Operations, was created. (Ex. 7).

On August 22, 2000, Marshall Durbin terminated Cagle's employment. (Doc. 1 at ¶ 11; Hillgartner's Dep. at Ex. 4; and Ex. 14). Rather than be terminated, Cagle requested to go back to her previous position or to another management position in the defendant's Jasper plant.

---

[3]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[4]Hillgartner's deposition is located at document 17.

[5]This position is also referred to as the Assistant Personnel Manager or Personnel Assistant Manager. (See Hillgartner's deposition at pp. 10-11, 16, 51-54 and at exhibit 4 thereto).

[6]Cagle's deposition is located at document 17.

2

(Doc. 1 at ¶ 13).   According to Marshall Durbin, her termination was part of a reduction-in-force.  (Ex. 14).

Cagle also alleges that she applied for the Human Resources Manager position on two occasions after September 1997, but the opening was filled each time with a male who had no human resource experience.  (Doc. 1 at ¶ 7).  Cagle further alleges that she trained each of the new Human Resource Managers that were hired during her tenure at Marshall Durbin to perform their jobs.  (Cagle Dep. pp. 52, 73).  When Cagle expressed an interest in the Human Resource Manager openings, her supervisor told her that the company was not going to hire any more females into the position.  (*Id.* at 77-78, 176).

Since her termination, Cagle has taken herself out of the work force because she states that she cannot mentally handle working "when a man is going to take her job."  (Cagle Dep. at pp. 26-27).

Cagle is a high school graduate.  (Cagle Dep. at p. 28).  Before going to work at Marshall Durbin, Cagle was employed with Dover Industries as a traffic manager; with Three Star Manufacturing as traffic manager, purchasing agent and Assistant Human Resource Manager; with Pennsylvania Blue Shield as a medical transcriptionist; and with Shoney's as a hostess/cashier.  (*Id.* at 28-42).

Cagle alleges that Randell Humphres ("Humphres")[7] was hired to perform identical tasks in identical circumstances as she was at a salary nearly $7,000.00 more than she was earning. (Doc. 1 at ¶ 14).  He was hired in the Personnel Supervisor for Night Shift Operations position that was created when Cagle was moved to the day shift.  Cagle states that she trained Humphres

---

[7] "Humphres" name is also spelled "Humphries" in the record.

3

to fill her position. (Doc. 1 at ¶ 7; Cagle Dep. at pp. 62-63).

As Assistant Human Resources Manager, Cagle's duties included staffing, handling complaints, taking injured people for medical attention, maintaining her CPR certification, creating payroll change notices, conducting orientations, interviewing, filing, obtaining cleaning supplies, signing paperwork, handing out payroll checks, separating payroll checks, and accepting an award on behalf of the company. (Cagle Dep. at pp. 54-58). Additionally, in a letter of recommendation, the defendant's Human Resource Manager, Danny Hill, wrote:

> Her job performance was very good and was precise on all her work. Her job first was Personnel Clerk on days, then she was promoted to Personnel Assistant Manager on the Night Shift, which was responsible for all aspects of Human Resources at Night. Then she came to days as Employment Supervisor/Assistant Personnel Manager. The reason she is no longer with us, is her job was eliminated due to company cutbacks. Listed are some of the duties she performed. She did petty cash, interviewing of employees for new hires, filling out insurance papers, was CPR certified, knows workman's compensation issues, and was responsible for all other human resource jobs such as typing of new hires, terminations, any changes on paper work, W-2's, checks, 401K and retirement paper work, vacations, pay raises, safety procedures, answering the phone, questions from employees, and procedures on the [sic] labor law.

(Hillgartner Dep. at Ex. 4).

On one payroll change notice, dated May 22, 2000, Barry Hillgartner notes that Humphres' position is not a new position and that Humphres replaced Cindy Cagle, who transferred to days. (Hillgartner Dep. at Ex. 2). Yet on another payroll change notice, also dated May 22, 2000, Barry Hillgartner notes that Humphres' position is a new one and that Humphres will "fill new management position of personnel supervisor for night shift operations." (Ex. 7). While Humphres did not have the hiring responsibility for the third shift, he was responsible for assisting the staff in determining the employment needs of the third shift. (Hillgartner Dep. at p. 14).

4

Hillgartner testified that Humphres had more duties than Cagle.  In addition to Cagle's duties, the defendant also expected Humphres to conduct safety meetings, assist in coaching the management team as to good management practices, and have responsibility for personnel employee disciplinary actions and transfers.  (*Id.* at 13).

The defendant maintains that the difference in pay between Cagle and Humphres was justified.  Specifically, Hillgartner testified that "[a]s far as job functions, the addition of - - his training, working with the supervision [sic] on their disciplinary actions, coaching, good communications [sic] with the employees in management, taking it to a higher level . . . ." (Hillgartner Dep. at p. 57).  Humphres' previous experience consists of Sales and Customer Service Representative; Sales, Customer Service Manager; Southern Sales Manager; Sales Manager; Salesman Cable Specialist; Plant Supervisor; and United States Marine Corp., Sergeant.  (Ex 8).

When Humphres began work in May 2000, he trained with Cagle at night for about two weeks until she moved to the day shift.  Cagle became aware of the disparity between her salary and Humphres' when she filed his payroll change notice.  (Cagle Dep. at p. 164).  Cagle did not file an EEOC charge at that point because Hillgartner told her he would get her pay up.  (Cagle Dep. at p. 172).  On August 22, 2000, Cagle was terminated.  (*Id.* at p. 178).  In January 2001, Cagle filed her EEOC complaint.  (*Id.*).

According to the plaintiff, she was the only person laid off in the reduction in force, aside from a male, who was terminated for cause, and a temporary employee. (Doc. 1 at ¶ 11; Cagle Dep. at p. 97).  The defendant, however, contends that several positions were included in the reduction in force, including those of Melissa Williams (Ex. 10), Lydia Allen (Ex. 11), Bill

Ashenfelter (Ex. 12), and Billy Broglin (Ex. 13).

## STANDARD OF REVIEW

Summary judgment is to be granted only if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c): *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided by trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed.2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23, 106 S. Ct. 2548; *see* Fed. R. Civ. P 56(a) and (b). Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2548. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are

irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed 2d 202

(1986). "[T]he judges's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at

249, 106 S. Ct. 2505.

## DISCUSSION

A plaintiff may assert claims based on unequal pay for equal work under the EPA and

Title VII. Under both, the plaintiff must establish a *prima facie* case of discrimination. Under

the EPA, the plaintiff must show that an employer has paid different wages to employees of

opposite sexes for equal work in jobs which require equal skill, effort, and responsibility and

which are performed under similar working conditions. *See Corning Glass Works v. Brennan*,

417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974). Under Title VII, a *prima facie*

case of sex discrimination requires showing a connection between the plaintiff's gender and the

adverse employment decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S.

248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). The plaintiff may establish a *prima*

*facie* case under the EPA by demonstrating that she occupied a substantially similar job and was

paid less. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992).

Under the disparate treatment model of a Title VII action, "there is a relaxed standard of

similarity between male and female-occupied jobs, but a plaintiff has the [ultimate] burden of

proving an intent to discriminate on the basis of sex." *Id*. at 1526.

7

**EPA Claim Analysis**

In *Miranda*, the court stated:

> Under the Equal Pay Act there is a prescribed form of strict liability: Once the disparity in pay between substantially similar jobs is demonstrated, the burden shifts to the defendant to prove that a "factor other than sex" is responsible for the differential. If the defendant fails, the plaintiff wins. The plaintiff is not required to prove discriminatory intent on the part of the defendant.

*Miranda*, 975 F.2d at 1532 (citing *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539 (11th Cir. 1991)). The EPA prohibits employers from paying employees at a rate less than employees of the opposite sex at the same establishment ". . . for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions. . . ." *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1568 (11th Cir. 1988) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 , 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)).

An employee demonstrates a *prima facie* case of discrimination pursuant to the EPA by showing that a specific male comparator or comparators has earned higher wages for the same or similar job. Once the employee presents a *prima facie* case, the employer may avoid liability by showing that the pay differences are based on (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. 29 U.S.C. § 206(d)(1).

Cagle contends in this action that she was not offered equal pay because she is a woman and that Humphres was paid more than she was to perform the same job that she had been performing on the second shift. Marshall Durbin counters that the disparity is justified because Humphres did not perform the same job as the plaintiff and because he had greater managerial

8

experience than the plaintiff.

### *Prima facie* Case

As noted, to establish an EPA claim, the plaintiff must first demonstrate a *prima facie*

violation. Specifically, she must show "that [her] employer pays different wages to employees

of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort,

and responsibility.'" *Mulhall v. Advance Security, Inc.*, 19 F.2d 586, 590 (11ᵗʰ Cir.), *cert.*

*denied*, 513 U.S. 919 (1994), quoting *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901 (11ᵗʰ Cir.

1987) (quoting *Corning Glass Works*, 417 U.S. at 195, 94 S. Ct. at 2228). The court in *Mulhall*

stated:

> In Equal Pay Act cases, we compare the jobs, not the individual
> employees holding those jobs. *Miranda v. B & B Cash Grocery Store, Inc.*], 975
> F.2d [1518], at 1533 [(11ᵗʰ Cir. 1992), *modified on other grounds as recognized in*
> *Meeks v. Computer Associates International*, 15 F.3d 1015 (11ᵗʰ Cir. 1994)].
> Only the "skills and qualifications actually needed to perform the jobs are
> considered." *Id.* Comparators' prior experience is not relevant to the
> "substantially similar" inquiry. *Id.* The examination also rests on primary, as
> opposed to incidental or insubstantial job duties. *Id.* Job titles are a factor for
> consideration, but are not dispositive. *Id.* The plaintiff need not prove that her
> job and those of the comparators are identical; the test is one of substantiality, not
> entirety. *Id.* Nonetheless, in EPA cases "[t]he standard for determining whether
> jobs are equal in terms of skill, effort, and responsibility is high." *Waters v.*
> *Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11ᵗʰ Cir. 1989). If
> plaintiff's evidence, with all inferences drawn in her favor, establishes an EPA
> violation and there is sufficient evidence such that a jury could find in her favor,
> then summary judgment for defendants is improper. *Id.*

*Mulhall*, 19 F.3d at 592. In *Waters*, the court stated:

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for
> "comparable" to show that "the jobs involved must be virtually identical, that is,
> they would be very much alike or closely related to each other." The restrictions
> in the Act were meant "to apply only to jobs that are substantially identical or
> equal." *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5ᵗʰ Cir. 1973) (footnote
> omitted). Similarly, in *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468
> F.2d 1256 (5ᵗʰ Cir. 1972), the court stated "[b]y substituting the term 'equal work'

for 'comparable work,' which was originally suggested, Congress manifested its intent to narrow the applicability of the Act." *Id.* at 1258. Congress intended to permit employers wide discretion in evaluating work for pay purposes. *Id.* Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving "substantial identity of job functions." *Id.*

*Waters*, 874 F.2d at 799.

Until the plaintiff's transfer to days, her job title was "Assistant Human Resources Manager." When she was transferred to days, her job title became "Employment Supervisor/ Assistant Human Resources Manager." The defendant contends that it hired Humphres as "Personnel Supervisor over Night Shift Operations," and that when that position was created, Marshall Durbin eliminated the "Assistant Human Resources Manager" position previously held by Cagle.

The plaintiff's duties as Assistant Human Resources Manager included handling employee complaints; handling employee injuries, including being CPR certified; handling payroll change notices; conducting orientations and interviewing employees; filing; stocking maid supplies, when necessary; acting for the day shift Human Resources Manager, when necessary; keeping up with OSHA laws and acting on the safety committee; and separating and disbursing payroll checks. (Cagle Dep. at 54-59). While she was Employee Supervisor/Assistant Human Resources Manager on the day shift, the plaintiff performed essentially the same job functions, but with a different title. (Cagle Dep. at 60).

The plaintiff asserts that when she was transferred to the day shift, Humphres replaced her and that she and Humphres performed the same job duties up until her termination. (Doc. 20 at 2). Because she is a female and because she alleges that Hillgartner and Jay Warren told her that a female would never be in a management position, the plaintiff contends that the evidence

10

at this juncture is sufficient to show that the disparity in pay was based on her gender.

The defendant contends that the plaintiff and Humphres held two different positions with different expectations for each. Specifically, the defendant asserts that it eliminated the Assistant Human Resources Manager position on the second shift and created the new position of Personnel Supervisor over Night Shift Operations. The Personnel Supervisor position was intended to handle all of the duties of the Assistant Human Resources Manager (handling injuries on the job, payroll change notices, orientation, interviewing, dispensing I-9 forms, and filing), as well as (1) conducting safety meetings for the third shift, (2) assisting in the coaching the nighttime management team, and (3) aiding Cagle in determining the personnel needs on the third shift. (Doc. 18 at p. 6; Hillgartner Dep. at pp. 13-15).

The plaintiff and the defendant clearly dispute whether the jobs performed by Cagle and Humphres involved equal work for purposes of the EPA. The record includes two payroll change notices for Humphres, both purportedly issued on May 22, 2000. One notice states that the position Humphres was hired to fill is not a new position and that he is replacing Cagle, who was being moved to days. (Hillgartner Dep. at Ex. 2). The other payroll change notice states that his position was a new one. (Ex. 7). The record includes no explanation for these conflicting documents. As such, at this stage, the court must interpret the conflict in the plaintiff's favor and find that Humphres was hired to replace Cagle when she moved to the day shift.

The pertinent question, however, remains whether the position that Humphres filled was the same for EPA purposes. Although Humphres was paid more to perform the job than the plaintiff, the initial issue remains whether the positions were the same.

11

The differences articulated by the defendant are not dramatic; however, they do differentiate the position performed by Humphres from that performed by the plaintiff when she was on the second shift. Nothing in the EPA precludes the defendant from taking one position and retooling it by adding additional responsibilities even if it results in the loss of the former position. It is evident that that is what happened in this instance. It is also clear that the former job held by the plaintiff was principally an administrative position. In contrast with that, the new position occupied by Humphres involves more managerial or supervisory components. The court finds that this precludes a conclusion that the positions are the same for purposes of the plaintiff's EPA claim. This is particularly true where nothing in the record suggests otherwise.

### The defendant's basis for the pay differential

Even if the plaintiff had made a *prima facie* showing of a violation, the employer may be exempted from the requirements of the EPA provided the pay differential is premised on one of the exceptions set forth in the Act. If the defendant makes the requisite showing, the plaintiff must rebut the explanation by showing "with affirmative evidence that it is pretextual or offered as a post-event justification." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). "If the plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Id.*

The defendant contends that the pay differential is appropriate premised on the fact that Humphres was more experienced than the plaintiff. (Doc. 18 at 7-8). The plaintiff retorts that the defendant has failed to overcome the plaintiff's *prima facie* case. Specifically, the plaintiff criticizes the defendant's position that it paid Humphres more because the pay rate was negotiated as being "nothing more than a 'market force defense' which has repeatedly been rejected in this circuit and [by] the Supreme Court." (Doc. 20 at p. 4). Additionally, citing

12

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992), the plaintiff

argues that the defendant's expectation that Humphres would take the job to a higher level is not

a justification at all.  (Doc. 20 at p. 4).

      One of the factors for removing a defendant's conduct from the requirements of the EPA

is a differentiation based on a "factor other than sex." *Irby*, 44 F.3d at 955.  The Eleventh

Circuit Court of Appeals has stated, "In the past, we have found that such factors include

"unique characteristics of the same job; . . . an individual's *experience*, training or ability; or . . .

special exigent circumstances connected with the business." *Id.* (emphasis in text) (citing *Glenn*

*v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir.), *cert. denied*, 488 U.S. 948, 109 S. Ct.

378, 102 L. Ed. 2d 367 (1988)).  Thus, "[e]xperience is an acceptable factor other than sex if [it

is] not used as a pretext for differentiation because of gender." *Irby*, 44 F.3d at 956.

      The defendant's argument that the difference in pay is due to Humphres' prior salary and

his experience is appropriate because it is not simply based on the prior salary. *Irby*, 44 F.3d at

956.  The pertinent inquiry then is whether the plaintiff has adequately challenged the

defendant's proffered reason.

      Although it is true that Humphres had approximately 19 years experience as a manager

(Ex. 9), none of it was in human resources or in the chicken business.  The defendant contrasts

Humphres' experience with that of Cagle, stating that she had no previous managerial or

supervisory experience.  The court notes, however, the plaintiff testified that she previously

worked in human resources with the defendant where she oversaw and handled employee

complaints and other human resource functions.  She did this for approximately three years.  She

also had experience as the "acting" human resources manager for a number of months.  (Cagle

13

Dep. at 55-57). Without more, the court cannot at this juncture conclude, as a matter of law, that the defendant would be entitled to summary judgment on this basis. The defendant's purported "higher expectations"of Humphres similarly are insufficient, without more, to warrant summary judgment on this premise.[8]

The motion for summary judgment is due to be granted on this claim due to the failure of the plaintiff to demonstrate that the positions were "equal" for purposes of the EPA claim.

### The Title VII Disparate Pay Claim

### Time barred

The defendant next asserts that Cagle's Title VII pay claim is time barred. Specifically, Marshall Durbin argues that when the plaintiff realized that Humphres was paid more than she, her disparate pay claim arose. Therefore, the date of the act giving rise to her charge was on or about May 22, 2000. Under Title VII, the plaintiff has 180 days from the date of the act giving rise to the charge to file an EEOC complaint. 42 U.S.C. § 2000e-5 (1992); *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993). According to the defendant, 180 days from May 22, 2000, would have been November 27, 2000, yet the plaintiff did not file her charge with the EEOC until January 30, 2001. (Doc. 18 at 9).

However, as the plaintiff correctly points out, if Marshall Durbin discriminated against the plaintiff, it did so not only on the day it hired Humphres at a greater salary, but also on every day of her employment. *Calloway*, 986 F.2d at 448. Therefore, Humphres had until 180 days from the date of her termination, August 22, 2000, to file her charge with the EEOC. Based on

---

[8]The defendant further argues that the plaintiff's EPA claim did not arise until May 22, 2000, when Marshall Durbin hired Humphres, and that her damages, therefore, could not possibly be more that $1,700.00. At this juncture, the court need not determine the plaintiff's damages.

14

the court's calculation, 180 days from August 22, 2000, would have been on or about February

18, 2001. Therefore, the plaintiff timely filed her EEOC charge.

### Damage amount

The defendant also asserts that

> Once a right to sue letter has been issued, the plaintiff's claims are only
> timely if the alleged discrimination occurs after the date which is 180 days prior
> to the date the plaintiff filed her EEOC charge, because the EEOC charge must
> contain the claims and facts upon which suit is brought. (citation omitted). Here,
> the plaintiff filed her EEOC charge on January 30, 2001. The date before which
> claims are barred is August 3, 2000, or 180 [days] prior to the filing of her charge.
> Therefore, the only disparate pay violation that could potentially be timely would
> be based on the position she held between August 3, 2000 and August 22, 2000
> when she was terminated. In the event Cagle succeeds in proving her disparate
> pay claim under Title VII, any recovery she could have would be limited to the
> time period between May 22, 2000 when Humphres was hired and August 22,
> 2000 when the plaintiff was terminated. Since the difference between her salary
> of $21,200 and Humphres' salary of $28,000 is $6,800 dollars [sic] annually, or
> approximately $1,700 for that three-month period, she can rollover [sic] no more
> than $1,700 in economic damages. Wherefore, Marshall Durbin is entitled either
> to summary judgment on Cagle's Title VII disparate pay claim or an order
> limiting her economic recovery to $1,700.

(Doc. 18 at 8-9). At this juncture, the court need not determine what the plaintiff's damages

might be.

### The merits

The court having determined that the plaintiff timely filed her charge of discrimination

with the EEOC and this lawsuit, the court must next focus on whether the plaintiff can prove her

claim of disparate pay under Title VII. The defendant asserts that the plaintiff cannot establish a

*prima facie* case. (Doc. 18 at 9; doc. 22 at 5). Specifically, counsel asserts, in pertinent part,

"The record is devoid of any evidence that shows any similarity of tasks between the position

she held and the position held by Humphres." (Doc. 22 at 5).

15

The appropriate framework from which to evaluate the plaintiff's claim of disparate treatment under Title VII is the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973), standard when circumstantial evidence is involved. *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1310-11 (11th Cir.), *superseded in part on other grounds*, 151 F.3d 1321 (11th Cir. 1998). The plaintiff has the initial "burden of establishing a *prima facie* case of [gender] discrimination." *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.

In *Miranda*, the Eleventh Circuit articulated that a "plaintiff establishes a *prima facie* case of sex discrimination under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." 975 F.2d 1518, 1529 (11th Cir. 1992). If a *prima facie* case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. If this is done, the plaintiff is required to show that the proffered reason was merely a pretext for the defendant's acts. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The court finds that the plaintiff has failed to present a *prima facie* case of discrimination. Although she is a female and was paid less than Humphres, she has not shown that her job was similar to the higher paying job held by Humphres. *Miranda*, 975 F.2d at 1529. At the outset, the court notes that Title VII has a relaxed standard for demonstrating the similarity of positions. *Miranda*, 975 F.2d at 1529, n.15; *see also E.E.O.C. v. Reichold Chemicals, Inc.*, 988 F.2d

16

1564,1570 (11ᵗʰ Cir. 1993 ) ("The district court failed to consider that Title VII has a relaxed standard for proving the similarity of positions. . . . ").

It is evident that some of the tasks performed by the plaintiff, including those involving staffing, were the same as those performed by Humphres. However, he (Humphres) had distinct managerial responsibilities that the plaintiff was not required to perform. As noted previously, her duties were more administrative and clerical. In contrast, Humprhes' duties may have included some administrative and clerical functions but also required that he conduct safety meetings, and coach the management team on the night shift in good management practices concerning administration, supervision, and the handling of disciplinary actions. (Hillgartner Dep. at pp. 13-14, 57). There is no evidence before the court that the plaintiff was required to perform these tasks as well.

Had the plaintiff articulated a *prima facie* case of discrimination, the burden would have shifted to the defendant to offer a legitimate, nondiscriminatory reason for its disparate payment practice. In support of its decision to pay the plaintiff less than Humphres, the defendant argues that the plaintiff's experience was inferior to Humphres' experience and that Marshall Durbin took Humphres' prior salary into consideration when negotiating his salary. (Doc. 18 at pp. 7-8). Because these assertions appear legitimate on their face, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the defendant's proffered reasons are pretext for unlawful discrimination.[9] "In other words, [the plaintiff] must demonstrate that a

---

[9]The plaintiff argues that the defendant has failed to rebut her *prima facie* case. Specifically, Cagle argues, "The fact that pay rates were negotiated is nothing more than a 'market force defense' which has repeatedly been rejected in this circuit and [by] the Supreme Court. (Citation omitted). Additionally, the expectations of taking the job to a higher level is clearly not a justification at all." (Doc. 20 at p. 4).

The court disagrees. The Eleventh Circuit has rejected the "market forces" defenses in cases where the defendant relies solely on prior salaries to determine disparate wage rates. *See Glenn v. General Motors Corp.*, 841 F.2d 1567 (11ᵗʰ Cir.

17

discriminatory reason more likely than not motivated [Marshall Durbin] to pay her less, or that [Marshall Durbin's] explanation is not worthy of belief." *Miranda*, 975 F.2d 1518 (11th Cir. 1992) (citing *Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981); *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1554 (11th Cir. 1990)).

The relevant question at this juncture, but for the court's previous determination, would be, whether the plaintiff has sufficiently challenged the defendant's proffered reasons for the differentiation in pay to overcome the defendant's motion for summary judgment. In *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), the court stated:

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Sheridan*, 100 F.3d at 1072 (citation and internal quotation marks omitted); *see also Walker*, 53 F.3d at 1564 (Johnson, J., concurring) (discussing methods of proving pretext). However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable.

If required, the court would find that under the circumstances, the plaintiff has offered

---

1988). While employers may not consider prior salaries alone, they may act on the basis of shift differentials or differences in experience, training, or ability, among other things. *Glenn*, 841 F.2d at 1571.

"such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[ ] for its action that a reasonable factfinder could find the [defendant's reason] unworthy of credence." *Id.* The evidence shows that the plaintiff earned $21,200.00 per year. This was $6,800.00 less per year than Humphres. Marshall Durbin contends that Humphres earned more because he had superior experience. The evidence shows, however, that the plaintiff also had previous managerial experience in human resources. Although their experience was different, the court would be disinclined to find the defendant's reason sufficient as a matter of law to grant the motion.

Additionally, the plaintiff's testimony includes evidence that Hillgartner and Jay Warren told her that they would not hire a female for a human resources position.[10] (Cagle Dep. 176-78). This would seriously bring into question the defendant's proffered reasons.

### Promotion Claim

The defendant also claims that Cagle's Title VII promotion claim is untimely. (Doc. 18, pp. 10-11). The three allegations of discriminatory acts in regards to promotions occurred in March 1999 (hiring of Ron Noel), May 2000 (hiring of Danny Hill), and May 22, 2000, (hiring of Randal Humphres). (Doc. 18, pp. 10-11). All three events occurred more than 180 days before the plaintiff's EEOC claim was filed on January 30, 2001. (Hilgartner Dep. Ex. 5 EEOC Complaint).

The plaintiff does not response to defendant's motion as to this claim. It is well-settled that grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Resolution Trust Corp. v. Dunmar, Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied*,

---

[10]According to the plaintiff, Warren told her that "they wanted a male." (Cagle Dep. at 176).

516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995); *see also Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (Where the plaintiff failed to respond to the defendant's summary judgment arguments on a claim, the Court deemed such claim abandoned). Accordingly, the plaintiff's claims of discriminatory acts in promotions are due to be dismissed. The court further finds that the claim is due to be dismissed for the substantive reasons articulated by defense counsel.[11]

### Retaliation Claim

Lastly, with regard to the plaintiff's retaliation claim, the defendant contends that she cannot establish a *prima facie* case of retaliation. The plaintiff did not respond to this argument as well. As such, the plaintiff's retaliation claim is also due to be dismissed. The defendant's motion is also due to be granted on the merits on this claim as well.[12]

### CONCLUSION

Upon consideration, the court finds that the defendant's motion for summary judgment (doc. 17) is due to be granted. An order consistent with this court's findings will be entered.

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon counsel of record.

---

[11] The court would have granted summary judgment on this claim anyway because the only exception to the 180 day time line is when a case has first been filed with an agency or in state court. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cr. 2000) (*citing* 42 U.S.C.A. § 2000e-5(e)(1)). That exception is not applicable in this case.

[12] The defendant argues that the plaintiff's retaliation claim is due to be dismissed because (1) she cannot establish that the termination was causally related to any protected expression (citing *Smith v. State of Georgia*, 684 F.2d 729, 730 (11th Cir. 1982) and *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002)), (2) the position was eliminated as part as a reduction in force, and (3) no evidence exists that the decisionmaker had knowledge of the plaintiff's complaints. (Doc. 18 at pp. 11-13). Even if the plaintiff had established a *prima facie* case, the defendant has offered a nondiscriminatory reason for the plaintiff's termination, a reduction in force, which she has failed to rebut. Additionally, she has failed to demonstrate that the decisionmaker had the requisite knowledge of her protected expression. Without evidence of pretext and knowledge, the court would have granted the defendant's motion for summary judgment on the plaintiff's retaliation claim even absent the plaintiff's abandonment of that claim.

**DONE**, this 20th day of September, 2004.

**JOHN E. OTT**
United States Magistrate Judge